Date signed April 02, 2014



DUNCAN W. KEIR
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Baltimore

| | | |
|---|---|---|
| In re: | : | |
| Joan Elizabeth Reinheimer, | : | Case No. 12-10052-DK |
| | | Chapter 7 |
| Debtor. | : | |
| ------------------------------------------------- | | |
| Jason Ortman, | : | |
| Plaintiff, | : | Adversary No. 13-101 |
| v. | : | |
| Joan Elizabeth Reinheimer, | : | |
| Defendant. | : | |

_____

### MEMORANDUM OPINION

Before the court is the adversary proceeding commenced by Plaintiff Jason Ortman ("Plaintiff") against Debtor/Defendant Joan Reinheimer ("Debtor"). The court held an evidentiary trial upon the Complaint on March 25, 2014. Initially the court set an April 9, 2014 hearing for the delivery of an oral ruling, but instead has decided to set forth its findings of fact and conclusions of law by written decision. Accordingly, the April 9th hearing is cancelled.

In this adversary proceeding Plaintiff asserts that Debtor is indebted to Plaintiff

and that the debt arose as a result of fraud committed by Debtor.  As a consequence Plaintiff seeks a determination by this court that the debt is non-dischargeable pursuant to Section 523(a)(2) of the Bankruptcy Code and further seeks entry of a judgment for the alleged damages.

Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code on January 3, 2012.  Subsequently the case was converted to Chapter 7 and on February 22, 2013, Debtor was granted a discharge.  Generally a Chapter 7 discharge would permanently bar any effort by a creditor to collect a debt which arose prior to the date of the conversion even though the debt is justly owed by the debtor.  *See* 11 U.S.C. §§ 727(b) and 348(b). Congress has long provided for a discharge in furtherance of the stated policy of affording a fresh start to the "honest but unfortunate debtor."  *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 659 (1991)(citing *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699 (1934).  However debts which meet the criteria set forth in the various subsections of Section 523(a) may be non-dischargeable and therefore not affected by the discharge. Where the grounds for determination of a debt as non-dischargeable are contained in Section 523(a)(2), (4), or (6), in order to have the debt not be discharged, the creditor to who holds the debt must file a timely complaint instituting an adversary proceeding in the bankruptcy court in which the underlying bankruptcy is pending.  *See* 11 U.S.C. § 523©).  The bankruptcy court has exclusive jurisdiction in determining actions brought pursuant to Section 523(a)(2), including the matter now before this court.

This adversary proceeding, having been timely filed by Plaintiff, presents two issues for determination by the court.

1.  Whether there a debt that is owed to Plaintiff by Debtor; and if so,

2.  Whether the debt was caused by fraudulent conduct of Debtor.

In this proceeding the same determination of facts is required to answer both questions.  In many cases adjudicated under Section 523(a)(2), the existence of debt may be found without determination of fraud.  For example, where a loan is made by a creditor to a debtor and the lending creditor asserts that the borrowing debtor committed fraud in obtaining the loan, the court may find that there is a valid debt owed to the creditor (the repayment obligation of the loan), whether or not the court finds that fraud was committed by the debtor.  Often the existence of the debt in such cases may be uncontested while the issue of non-dischargeability of the debt under Section 523(a)(2) is disputed.

However in the instant proceeding, Plaintiff must assert that the individual Debtor is liable, not by some contractual undertaking, but under the Maryland common law tort of fraud.  Thus, unless Debtor committed fraud, proximately causing the loss which Plaintiff asserts as a debt against Debtor, there is neither a debt under applicable non-bankruptcy law, nor a basis for non-dischargeability under Section 523(a)(2).

The court finds the following facts established at trial.  Debtor and her husband, Richard Reinheimer built a large dwelling on Love Point in Queen Anne's County.  Subsequently a downturn in the husband's contracting business caused financial difficulties.[1]  Debtor testified that friends and/or family suggested that the Reinheimers use

---

[1]  The court takes judicial notice that Debtor previously filed a previous Chapter 11 bankruptcy case in September of 2009 that was subsequently dismissed.  Richard Reinheimer  filed four bankruptcy cases in 1991, 2009, 2010, and on October 28, 2013.  Mr. Reinheimer received a Chapter 7 discharge on September 18, 2009 and his subsequent two Chapter 11 cases were dismissed without a plan being confirmed.

their house to earn income by renting for receptions and parties.  In the Fall of 2010,

Richard Reinheimer "put together" a website which was online by January 2011, advertising

Love Point as a reception venue.  In the Summer of 2011, the Reinheimers placed an

advertisement in Premier Bridal magazine.  The Reinheimers received numerous inquiries.

Meanwhile they contacted legal counsel to set up a business which was formed as an LLC

under the name Love Point at Kent Island, LLC (the "LLC").

Richard Reinheimer undertook to have an existing patio built into a "ballroom"

and to obtain the necessary permits for the structure.  It appears that a use and occupancy

permit for a "gazebo" was issued by the County on June 29, 2012 for "residential use only."[2]

In addition, the Reinheimers applied for a permit from the County to use their residential

facility as a bed and breakfast.  The court finds credible the testimony of Debtor that the

Reinheimers were of the belief that the LLC could use the facility as a venue for weddings

under such a permit and believed that other bed and breakfast establishments within the

County were so used.  Mr. Reinheimer met with County officials in April and May of 2011

in furtherance of obtaining a certificate for a bed and breakfast.[3]  A letter was written to Mr.

Reinheimer by Frank Hall, Zoning Inspector in the Department of Planning and Zoning of

Queen Anne's County dated May 23, 2011.[4]  The letter advised that as to Mr. Reinheimer's

request for clarification as to permitted use of the facility for wedding receptions,

commercial activity was not permitted due to the zoning classification and the property's

---

[2] Plaintiff's Exhibit 1, at Bates No. 2.

[3] *Id.* at Bates No. 24.

[4] *Id.* at Bates No. 3.

location in the Critical Area Resource Conservation Area.  This was followed by a letter

dated June 10, 2011 to Mr. Reinheimer from James Barton, Zoning Administrator, stating

that the Zoning Office had become aware of the LLC's website advertising catered events.[5]

The letter reiterated that commercial activities were not allowed and that such activities

would constitute violations.  On July 21, 2011, another letter was addressed to Mr.

Reinheimer from Mr. Barton stating that due to the zoning, the only use permit that could be

granted was for a bed and breakfast if all approvals of County agencies were obtained and

that a bed and breakfast would not allow operation as a wedding facility.[6]  The letter

provided that the continuance of this operation would result in civil zoning citations.

        Meanwhile Plaintiff and his fiancee (now spouse), Danielle Tarburton, (now

Danielle Ortman) (hereinafter "Danielle" and together with Plaintiff referred to as "the

Ortmans") met with Debtor after having seen the website.  They discussed having a wedding

at the facility and Debtor showed the Ortmans the premises and informed that the facilities

could accommodate their wedding and requirements.  The discussion included the expected

number of guests, band, and catering requirements.  No mention of permits or any zoning

issues was made.  The Ortmans decided that they liked the facility and a week later on

August 8, 2011 signed a contract with the LLC to hold a wedding and reception for a rental

period of five hours at the facility.[7]  A check was delivered to the LLC for the full amount of

the "rental fee" in the amount of $7,830.[8]

---

[5] *Id.* at Bates No. 4.

[6] *Id.* at Bates No. 5.

[7] Plaintiff's Exhibit 3.

[8] Plaintiff's Exhibit 4.

At some subsequent point in time the application for a permit as a bed and breakfast was turned down by the Office of Planning and Zoning.  The Reinheimers contested the denial and the position of the County agency that a bed and breakfast permit would not allow use as a wedding facility and filed an appeal with the Board of Appeals of Queen Anne's County.  Meanwhile the facility was used as a venue for scheduled weddings arranged by the Reinheimers through the LLC.  On February 23, 2012, the Board of Appeals issued its Findings and Decision on the denial of the application for a zoning certificate to operate a bed and breakfast and the issue of whether with a bed and breakfast certificate the facility could be used to host weddings and receptions.[9]  The Board found that the certificate should be granted, separating the question of qualification to be a bed and breakfast from issues of enforcement for violations.  The Board further found that the use of the property for weddings, wedding receptions and other receptions  was not included within the definition of a bed and breakfast.  No communication of the ongoing zoning problems regarding use of the facility was communicated to the Ortmans at this time.

However, on March 2, 2012, Danielle emailed Debtor communicating that she had heard news that the facility was not zoned to have weddings.  Danielle inquired as to what would happen to her wedding scheduled for September 22, 2012 if the County did not change its position as to permitted usages by a bed and breakfasts.[10]  It appears that Richard Reinheimer responded by telephone stating that the facility had the proper permits.[11]  By

_____

[9] Plaintiff's Exhibit 1, at Bates No. 22.

[10] Plaintiff's Exhibit 8.

[11] *Id.*

- 6 -

email Danielle replied that her mother wanted a meeting.[12]  Debtor and Danielle testified

that Debtor and Mr. Reinheimer held a meeting with the Ortmans and Danielle's mother in

March of 2012.  At that meeting, Debtor showed the progress that had been made on

renovations to be completed before the wedding and told the couple that the wedding could

go forward because the LLC had counsel pursuing a change in the County's position, and

that if necessary, the wedding could be held with the Ortmans treated as family of the

Reinheimers.  Debtor represented that if a fine was imposed by the County, the LLC would

pay any fines.

Both of the Ortmans testified that they were uncomfortable with the situation so

they wanted to cancel the use of the facility and demanded a refund of their money.  The

contract has a refund provision but Debtor informed the couple that a refund was not

possible as the fee had already been used to fund the renovations promised and neither the

Reinheimers nor the  LLC had enough funds to make a refund.

Feeling they had no choice and no additional funds to afford another wedding

venue, the couple hoped for the best.  However on May 21, 2012, the Department of

Emergency Services by certified mail addressed to the Reinheimers, informed them that a

cease and desist order had been placed against the use of the gazebo as an "unapproved

assembly."[13]  The letter further stated that the office had been given a list of currently

booked events through June 13, 2013 and that this was a violation of the applicable codes.

It then  appears that the LLC and the Reinheimers continued to host previously scheduled

wedding events while filing an appeal of the Board of Appeals Decision in the Circuit Court

---

[12] *Id.*

[13] Plaintiff's Exhibit 1, at Bates No. 15.

for Queen Anne's County.  An order was entered by that Court on June 25, 2012, affirming

the Board of Appeals and enjoining the Reinheimers from using their property to host

weddings and receptions.[14]  However, the Reinheimers continued to hold wedding events at

the facility using "short term leases."  In a memorandum entered by the Circuit Court on

July 23, 2012, the court found the short term leases were a "ruse" and found the

Reinheimers in civil contempt.[15]  The court ordered that the Reinheimers send letters to

scheduled wedding participants cancelling the use of the venue and take down the website.

The Reinheimers and the LLC sent a form letter to, *inter alia*, the Ortmans stating that they

were unable to hold planned weddings.[16]

On September 5, 2012, counsel for the Ortmans wrote a demand letter to the LLC

demanding a refund of the fee plus the cost of new invitations and shipping for the Ortmans'

wedding now planned for an alternative venue.  A lawsuit was then commenced in the

District Court of Maryland for Queen Anne's County against the LLC and the Reinheimers,

demanding $7,942.00 plus costs and reasonable attorney's fees.[17]  The action was stayed

against Debtor as a result of the existing automatic stay created by her pending bankruptcy

case.  The case proceeded to entry of a default judgment against the LLC and Richard

Reinheimer for consequential damages and costs and punitive damages against Richard

---

[14] *Id.* at Bates Nos. 36-42.

[15] *Id.* at Bates Nos. 18-21.

[16] Plaintiff's Exhibit 5.

[17] Plaintiff's Exhibit 6.

- 8 -

Reinheimer.[18]

Plaintiff asserts that Debtor is individually liable for the losses incurred by Plaintiff because those losses were caused by the Debtor's fraud.  The evidence is uncontradicted that only the LLC was a party to the contract with the Ortmans.  Generally that corporate separateness would shield Debtor from personal liability for the failure by the LLC to perform the contract.  However, if the Plaintiff's losses were the result of the Debtor's individual's fraudulent conduct, the corporate separateness will not shield Debtor from individual liability for her own tortious conduct, even though the fraud was committed in the furtherance of the LLC's business.  *E.g., Wilcoxon Construction, Inc. v. Woodall (In re Woodall)*, 177 B.R. 517, 522 (Bankr. D. Md. 1995).  However, Debtor is not liable individually for the fraudulent conduct of others in which Debtor did not participate.

This court previously has enunciated in opinions the elements that a plaintiff must prove in order to prevent the discharge of a debt alleged to arise from misrepresentation or fraud by the debtor.

> To sustain an action under § 523(a)(2)(A) a plaintiff must satisfy the necessary five elements by a preponderance of the evidence.  To successfully prosecute a § 523(a)(2)(A) claim, a Plaintiff must prove:
> 1. That a representation was made by the defendant;
> 2. That the defendant knew that the representation was false when she made it;
> 3. That the defendant made the representation with the intent and purpose of deceiving the plaintiff;
> 4. That the plaintiff justifiably relied on the false representation; and
> 5. That plaintiff suffered damages as a proximate result of the

---

[18] The inclusion of Debtor as a defendant in the District Court suit was a violation of the automatic stay.  No action for relief from the automatic stay was filed in this bankruptcy court.  It therefore appears that plaintiff therein did not attempt to prosecute the action against Debtor once notice of the stay was given.

representation.

*Gordon v. Fleming, (In re Gordon)*, 491 B.R. 691, 701 (Bankr. D.Md. 2013) (citing  *Garner,*

498 U.S. at 291, 111 S.Ct. at 661 (1991); *In re Rountree,* 478 F.3d 215, 218 (4th Cir. 2007);

*In re Koep,* 334 B.R. 364, 371-72 (Bankr. D.Md. 2005); *In re Pleasants*, 231 B.R. 893, 897

(Bankr. E. D. Va.. 1999);  *In re Biondo,* 180 F.3d 126 (1999); *In re Valdes,* 188 B.R. 533

(Bankr. D. Md. 1995))

      While the underlying validity of a creditor's claim is determined by state law, the

issue of non-dischargeability is a matter of federal law governed by the Bankruptcy Code.

*Garner,* 498 U.S. at 283, 284, 111 S.Ct. at 657, 658 (citing *Brown v. Felsen,* 442 U.S. 127,

129–130, 99 S.Ct. 2205 (1979)).

      Plaintiff asserts that the promises made by Debtor that the Ortmans' wedding

could and would be conducted at the facility as contracted and paid for were false

representations both as to what was stated and what was not disclosed by Debtor at the time

that the contract was entered into and at the meeting in March of 2012.  Plaintiff alleges that

Debtor knew in August of 2011 that the facility was not approved by the County as a bed

and breakfast and further knew at all times that the County would not permit wedding

functions even with a bed and breakfast certification.  Therefore Plaintiff asserts that the

representations made by Debtor to Plaintiff were false and the failure to disclose the zoning

controversy was a further misrepresentations by the omission.

      As previously described by this court: "A misrepresentation can be any words or

conduct which produce a false or misleading impression of fact in the mind of another.  An

omission may constitute a misrepresentation where the circumstances are such that a failure

to speak or act creates a false impression."  *Gordon*, 491 B.R. at 701 (citing *Pleasants*, 231

- 10 -

B.R. at 897).

The LLC's undertaking under the contract to host the wedding was not fulfilled. However, the failure to subsequently perform a contractual promise of future performance does not automatically cause the promise to be found a false representation as an element of the tort of fraud.  Plaintiff must demonstrate that Debtor knew that the promise(s) were false when the representations were made, or that Debtor made the representation with reckless disregard for the truth.

> The requirement of a knowing false representation can be satisfied by a reckless representation. A representation is "reckless" if it is made without any knowledge of the truth, if the person making the representation knows that he does not have sufficient information or a basis to support it, or if he realizes that he does not know whether or not the statement is true.  Simply stated, a representation is made recklessly when the speaker has no regard for whether it is true or false.

*Id.* (Citations omitted)

At the time the contract was entered into in August of 2011, the certificate as a bed and breakfast had not been obtained and Richard Reinheimer had been notified in writing that weddings and receptions would violate zoning restrictions even if a certificate was obtained and that violations would result in citations of up to $500.00 per day.[19]  The fact that the certificate had not been received when the Ortmans' contract was entered into does not by itself cause the court to find that the representations by Debtor were knowingly false or reckless.  The representations were that the wedding and reception could be hosted 13 months in the future including the completion of renovations which were obviously not finished in August of 2011.  Enterprises such as newly constructed housing often enter into

---

[19] *See* Plaintiff's Exhibit 1, at Bates No. 5.

contracts for future occupancy before permits such as use and occupancy are received. However, if Debtor had knowledge of the County's communications as to the prohibition on use of the facility, the statements made by Debtor at the initial meeting with Plaintiff to the effect that the wedding and reception could be held at the facility and the subsequent contract promise would constitute a recklessly false statement, particularly when compounded by the omission of information as to the zoning use dispute. Furthermore, the court should consider a statement made with reckless disregard for the truth as evidence supporting an intent to deceive. *See Gordon*, 491 B.R. at 701.

Debtor denies that in 2011 she had any knowledge of the County's communications concerning the limitation on legal uses of a bed and breakfast, including any communication from the County or her husband. No direct evidence of communication of the zoning restriction to Debtor was introduced. All of the writings from the County in June and July of 2011 were addressed solely to Richard Reinheimer and those writings only refer to meetings between County officials and Mr. Reinheimer. Plaintiff called to testify neither a witness from the County nor Mr. Reinheimer. Instead in final argument, Plaintiff urged the court to infer that Debtor had knowledge in July and August of 2011 from the business and familial relationship between Plaintiff and her husband. To the contrary, Debtor testified that while she was in charge of the LLC overall, the project of securing necessary permits was undertaken solely by Mr. Reinheimer due to his experience in dealing with County permitting in his occupation as a builder. Mr. Reinheimer told Debtor that permits would be available as needed to use the property as a bed and breakfast, including holding weddings and receptions. Debtor further testified that she knew of other bed and breakfast facilities that rented their premises for weddings and receptions and that she never

imagined the County would deny such use to their facility.[20]

The Plaintiff's further attempted to support conflating Mr. Reinheimer's knowledge and legal responsibility with the Debtor's alleged fraudulent conduct by introducing records from the District Court of Maryland showing that punitive damages were awarded against Mr. Reinheimer in an action that pleaded fraud in a count seeking such damages. While questioning Debtor, counsel for Plaintiff sought to characterize the Maryland District Court case against Richard Reinheimer as being under the same facts and circumstances as this adversary proceeding. However subsequently during final argument, Plaintiff's counsel stated that although punitive damages were awarded against Richard Reinheimer, punitive damages could not be requested or ordered against Debtor herein because Mr. Reinheimer's conduct differed from that of the Debtor.[21] Neither *res judicata* nor collateral estoppel applies against Debtor as a result of the Maryland District Court Judgment against Mr. Reinheimer. Clearly *res judicata* (matter preclusion) is inapplicable. As stated above, this court has exclusive jurisdiction as to the determination of the non-dischargeability of a debt under Section 523(a)(2). The matter before the Maryland District Court was not, nor could have been, the determination sought herein. As to collateral estoppel, even if all other elements of that doctrine were otherwise met (and it does not

---

[20] Debtor introduced into evidence Defendant's Exhibit A which is a current ad for a wedding venue at bed and breakfast establishments in Queen Anne's County as evidence of her ongoing belief that a bed and breakfast permit would allow the LLC to host wedding receptions.

[21] The Plaintiff's counsel stated: "[W]e did not seek punitive damages in this case and I think that was unique to that case because they had Richard Reinheimer who had somewhat different involvement but the same issues and factual transactions. . . . So in good conscience I cannot tell the court that a complaint that doesn't contain that prayer is apposite for that relief."

appear so), the automatic stay protects against the use of that doctrine.  *E.g., In re Eagleston*, 236 B.R. 183, 187-88 (Bankr. D. Md. 1999).

Having carefully listened to the testimony and observed Debtor as a witness, the court finds that Plaintiff has failed to carry his burden to prove two of the necessary elements by the requisite preponderance of the evidence.  The court finds that the evidence does not demonstrate that it is more probable than not that the Debtor's statements to Plaintiff in July and August of 2011 were known by Debtor to be false when made, or made with reckless disregard for the truth or falsity.  Nor does the evidence demonstrate that Debtor made the representations with intent to deceive.

As to the statements made by Debtor at the meeting in March of 2012, Debtor admitted that she had learned of the County's denial of use of the facility under a certification as a bed and breakfast approximately a month before the meeting.  However, Plaintiff also knew of the problem with the County zoning by this point in time.[22]  The Ortmans requested a refund at that meeting, being unsatisfied with the Debtor's statements as to the future performance under the contract.  When told that neither the Reinheimers nor the LLC had the money to refund, Danielle testified that the Ortmans felt they financially had no choice and could only "hope and pray that it worked out."  No new money was paid to the LLC or Reinheimers. The continuation of the contractual relationship was therefore not in reliance upon some further misrepresentation at the meeting.  The Ortmans wanted out of the contract at that point.  Instead the continuation was the result of the communication of the Reinheimers' impecunious situation.  No assertion has been made nor

---

[22] *See* Plaintiff's Exhibit 8.

evidence introduced that the representation of the inability of the Reinheimers or the LLC to pay the refund was false. Debtor informed the Ortmans that the wedding could be held because counsel for the LLC continued to seek a change in the County's position, that the Ortmans could be treated as family which Debtor stated would allow use of the facility, or if necessary the LLC would pay any fine levied as a result of the use.[23] From this record the court cannot find that the representations made at the March 2012 meeting constituted false statements made knowingly by Debtor with intent to deceive and upon which Plaintiff relied to his detriment. Plaintiff testified that he presently believes that Debtor wanted to fulfill the promised hosting of the wedding.[24]

The court is not unsympathetic to the feeling of injury held by the Ortmans. Although their wedding was held at a substitute venue, apparently at no cost for the use of the home of friends, they did not receive what they paid for–the use of the Reinheimers' waterfront facility as a venue. Some additional cost for replacement invitations was incurred.[25] However for the reasons stated above, the court concludes that these debts

---

[23] The July 21, 2011 letter to Mr. Reinheimer had threatened fines if violative use continued. It was after the March 2012 meeting between the Ortmans and the Reinheimers that the Fire Marshal placed a cease and desist order against the use of the gazebo, the hearing was held on the consolidated matters of the appeal to the Circuit Court from the Board of Appeals and an action by the County seeking an injunction, and the Circuit Court's subsequent granting of the injunction. Instead of being fined for continued use of the facility, the Reinheimers were at that time ordered to cease operations.

[24] On cross examination, Debtor asked Plaintiff: "Mr. Ortman, do you believe that myself or Love Point at Kent Island wanted to have your wedding on September 22nd 2012?" Plaintiff responded: "Yes, I do believe you wanted to have the wedding."

[25] The amount of the replacement invitations was stated to be $112.82 in the demand letter dated September 5, 2012 and included in the consequential damages awarded against Richard Reinheimer. Plaintiff's Exhibits 7 and 6, respectively. In testimony before this court, Plaintiff estimated the amount to be $200.

reduced to judgment against the LLC and Richard Reinheimer, have not been proven to be the result of fraud by this Debtor.  Accordingly judgment as to the determination of non-dischargeabilty must be entered in favor of the Debtor and the alleged indebtedness of Debtor found to be dischargeable.[26]

An order in accordance with this Memorandum will be entered.

cc:      All counsel
         All parties

**End of Decision**

---

[26] Plaintiff also demanded that a judgment include an award of attorneys' fees, stating that such an award was permitted upon a finding of fraud.  Even if this court were to have determined that the debt was incurred by fraud, the court concludes that Plaintiff's counsel's statement of law is incorrect. The general rule is that attorneys' fees are not recoverable in an action for damages, absent a statutory provision, or special circumstances such as a contractual undertaking.  *E.g., Empire Realty Co., Inc. v. Fleisher,* 260 Md. 278, 286, 305 A.2d 144, 148 (1973).  While Section 523(d) authorizes an award of attorneys' fees to a defendant under some circumstances, no provision exists in favor of a plaintiff acting under Section 523(a).  Nor does Maryland law generally allow such an award upon a finding of fraud, in the absence of punitive damages as may be awarded upon a finding of acts partaking of a wanton or criminal nature.  *Id.* at 286, 305 A.2d at 149.  Plaintiff has conceded that punitive damages could not have been awarded in this adversary proceeding.

- 16 -